ELLA T. KYNE, an Infant, by Her Next Friend, v. WILMINGTON & NORTHERN R. Co.

*Railroad Crossing— Construction of—Obstruction to Public Highway—Negligence—Contributory Negligence.*

Contributory negligence of the slightest degree on the part of the plaintiff is a good defence to an action for damages for a personal injury.

When a statute provides that all railroad companies must make such highway crossings " as the circumstances of the case and the public safety may require," the nature of the crossing is not governed by the public safety alone, but by what is practicable, in the judgment of a competent engineer, to be done for the purpose of carrying out the objects of the railroad company.

The statute provides that no approaches to a railroad crossing shall be of a heavier grade than five degrees, and that such approaches shall be protected by suffi-

cient railings or guards. *Held*, in an action against a railrord company for damages for a personal injury received by one driving upon a highway approach to a railroad crossing, that the question as to whether the company was guilty of negligence in respect to such approach, by reason of delay in erecting railings thereto after having made the approach by a filling, was a question for the jury ; that the fact that the company did not begin to erect the railings until the day of the accident, although the filling had been completed some three months before, was not of itself negligence, if it would have been impracticable or premature, on account of the setting of the filling, to erect the railing sooner, and that the company would be responsible for the injury (in the absence of contributory negligence on the part of the plaintiff) if the approach to the crossing was of a heavier grade than that limited by the statute, provided such excess in grade caused the accident.

A railroad company is bound to use every reasonable precaution to prevent injury to those using a highway along or across its track ; and if it fails to use proper care, such as is required by statute, or is rendered necessary by the character of the obstruction, the obstruction becomes a nuisance to individual rights, and renders the company liable in damages.

When a railroad company constructs its road over a public highway, it is bound to so restore the highway that its use by the public shall not be rendered less safe or convenient, except so far as diminishing the safety or convenience of the public is inseparable from the construction and use of the railroad.

A railroad company is liable for negligently placing objects on or near a public highway, naturally calculated to frighten horses.

It is not negligence in a railroad company to leave a car standing over night upon the track near, but not upon, a highway crossing, provided it was not so near the highway as to frighten an ordinary, quiet and gentle horse passing on the highway.

Where an infant of tender years (here about nine years of age) receives an injury while being driven in a carriage by its father and while in its father's actual control, the infant will be affected by negligence on the part of the father, contributing to the injury, and will be precluded by such negligence from recovering against a third party damages for the injury.

(*New Castle, May 31, 1888.*)

ACTION on the case to recover damages for a personal injury.

*Levi C. Bird* for plaintiff.

*Bradford & Vandegrift* for defendant.

HOUSTON, J., charging the jury :

Gentlemen of the jury :   This action, as you have learned before, is what is commonly called an action on the case, to recover damages for an injury sustained in driving over the road called the Barley Mill Road, in Brandywine or Christiana Hundred, not far from this city, by reason of the alleged negligence of the defendant company in the manner of building the embankment on that road with a view to crossing by the railroad over it.

It is brought by Ella T. Kyne, a minor of tender years, by her next friend Eugene Sayers, against the Wilmington & Northern Railroad Company, for that injury; and in order that I may present fairly to the counsel in the case, and to the jury, and to all who may hear me, I think it proper to present to you the points of law which have been propounded and questions which have been propounded by the counsel respectively, on which they ask the charge of the court.

There has been a great deal of conflicting evidence in this case, and it will be of course necessary for the jury to determine—and, in cases of that kind, if it is possible to reconcile the testimony of the different witnesses which conflict with each other, it is the duty of the jury to do so; if they find it impracticable, they must then determine in their best judgment after due consideration of all the facts of the case and the demeanor of the witnesses—their appearance—to which the greatest credit must be given.   That is the function of the jury, and one with which the court has nothing whatever to do.

There is also some conflicting law in this case which makes it quite as delicate a duty to be performed by the court as that which will devolve upon you.   There is not, however, any great contrariety of opinion between the counsel upon the questions of law

which have arisen in the case, but I wish you to distinctly understand, and I want the counsel to understand, that what I have to say with reference to the law in this case will be confined, as far as I am able to confine it, to the points which they have presented; and if the rulings of the court should not be satisfactory, it will be proper to go to a higher tribunal for revision.

It is proper that I should state the points made by the counsel for the plaintiff first, because they were first presented to the court; I will say, however, before proceeding to do that, that the law is well settled by the decisions of the courts of this State, as well as of the courts of England and the courts of the various States of the Union, that when a company or a defendant is sued for an injury alleged to have been the result of negligence on their part, of course the plaintiff assumes the duty of proving to the satisfaction of the jury, by all the evidence which they have heard, that the defendant has been guilty of the negligence alleged. If, however, when it is proven to the satisfaction of the jury, on the part of the defendant, that the plaintiff himself has been guilty of negligence in the matter, which has resulted in the injury complained of, he cannot recover. It is a good defense to the action, and it is immaterial to what extent that negligence may be proven to the satisfaction of the jury, provided there was any negligence on his part which contributed to it. Therefore, if that was all in this case, and the jury should come to the conclusion that the defendant in the first place was negligent as alleged, and also that the plaintiff was negligent, in manner alleged by it, in driving over this road, then there would be very little for the court to say to you; but, if you come to that conclusion, your duty would be to return a verdict for the defendant. However, this goes beyond that, and brings up a very nice question,—brings us to a debatable ground, and one which is contested, and upon which we have conflicting decisions of the courts of other States, but none in ours; because I think I am safe in saying that this is the first time a case of this particular character has been presented for the consideration of the court and

jury in this State.   The law in regard to negligence, and damages claimed by reason of it, existing in courts of justice, has been advanced by the decisions of the courts, to various degrees.  We have had within the last few terms of this court several cases here in which the question arose how far a master might become responsible to his servant, or the person in his employ, by reason of the negligence on his part in supplying him with adequate machinery or implements for his employment; and in which, if there be negligence on the part of the servant in the use of it, proved to the jury, he cannot recover, although the defendant may have been guilty of some negligence on his part which led to it.   But I will not give the ramifications of it, and the developments of the law in all its branches on these questions.   We now have a case which presents one of another character to us, and that is the higher relation of parent and child.   Master and servant first, and parent and child afterwards.   This case, therefore, differs very materially from the cases we have had in the courts in the last few terms.

Now, both counsel seem to admit, so far as these propositions reveal their views, that it must be proved on the part of the plaintiff that the defendant was guilty of negligence in the particulars complained of, in order to entitle the plaintiff to recover in the action; then, that if contributory negligence is proven, to the satisfaction of the jury, on the part of the plaintiff in the action, the plaintiff cannot recover.   There arises in this case the additional question, supposing there was negligence on the part of the father in the driving of this carriage, with his wife and child, over this road, on that occasion, after dark, on the 15th of October, 1886. That would prevent him from recovering, and the child from maintaining this action.   I am sorry I have not had time to give more consideration to the question, but I shall proceed, before I dispose of the case, to announce to you what the conclusion is the court has at present arrived at.

The counsel for the plaintiff ends with this statement,—it is based on the statute of 1869, which prescribes the requirements for

constructing railroads across public roads of the county, but more particularly with regard to crossing bridges and crossings,—" that the law of Delaware provides," says the counsel, in the first place, " that all railroads in the State crossing any turnpike, public road, or private roadway, shall be so constructed as not to impede or obstruct the usual and necessary travel over said roads, and shall make and maintain in all such cases either bridges over the railroad, passages under the same, or crossings thereto at grade, according as the circumstances of the case and the public safety may require. If the jury believe that the injury to the plaintiff was caused by the neglect of the defendant company to observe and keep the said law, the plaintiff, if no negligence is attributable to her, is entitled to recover." Now, I will say in regard, to that, that the law, though not stated in words, is correctly stated by the counsel for the plaintiff. It has reference to the first section, and that is divided into two paragraphs. Instruction is asked upon the first portion of the first section of the Act,—the Act concerning railroads.

"Section 1. That all railroads and those crossing any turnpike, public road, or private roadway, shall be so constructed as not to impede or obstruct the usual and necessary travel over said roads; and every railroad company now or hereafter incorporated in this State shall make and maintain, in all such cases, either bridges over the railroad, passages under the same, or crossings thereto at grade, according as the circumstances of the case and the public safety may require."

That is very specific; and that is the law by which all railroads are now to be governed and have been and must be governed since the passage of this Act in 1869.

I do not know that I am called upon, or that the court is called upon, in regard to this particular point, to say whether it was the duty of this company to have constructed a tunnel under this Barley Mill Road or not, but still that was suggested. Now I may say to the jury that, as we are at present advised on the subject, the company had ability to act, and if it did not construct a

tunnel under this road instead of making a crossing at grade, we feel bound to say to you that if you are satisfied, from the evidence —the engineer's testimony—on the subject, that it could not have been done without having a tunnel so low beneath the ground as to be subject to be flooded, it was a proper consideration for him, and he was not bound (if such was the case, and he was the judge of it) for such cause it was out of the question to construct a tunnel there. This thing of engineering is a great and a very magnificent science, and that is one of the great things in which the genius of engineers is particularly displayed,—that is, in the selection and fixing of a roadbed. It is necessary in certain places that tunnels must be made, and they are made at vast expense; but you must know that if a tunnel had to be made, and, after being made, would be subject to every heavy rain through flooding, it would be utterly useless for the purposes of the company and make the road impracticable as an operating road. Therefore we must say to you that when a law provides " that such crossing shall be made as the circumstances of the case and the public safety may require," it is not the public safety alone that governs it, but what is practicable, in the judgment of a competent engineer, to be done for the purpose of carrying out the objects of the company. They have a charter to build a railroad, and they proceed upon the advice of their engineer as to how it shall be built, and where such danger as that would be incurred as to diminish the use or utility, or utterly destroy the purposes for which the road was built, to construct a tunnel,—but might make it at grade or by a bridge over it, as might be deemed most important and desirable for the road and the safety of the public travel or public safety. I therefore instruct you, on the evidence in this case, that the court does not consider that it was proper and necessary that the company should have constructed a tunnel under that road, or a bridge over it. The grades of a road may be made such that they would be utterly of no use if they were so constructed; and grades might be made so heavy, even though there be a bridge over the road, or the expense of construc-

tion so great, that it would be impossible to carry out what the company was authorized by law to do; and it has a right to do whatever is necessary, in order to carry out the powers conferred upon it by Act of the Legislature and the charter granted. Now what the railroad, defendant, was doing by way of raising its road by filling it in, it is to be presumed by the court and jury was necessary to be done in order to carry out the purpose of the grant made by the Legislature; and while it was engaged in constructing it, as it worked on a road then open to the public and was still being used day by day, it was the duty resting upon it to keep that road in a safe, passable condition day by day while it was filling it. It is for you to say, from the evidence, whether it did that or not. I do not know that there is any special complaint made that there was any default on its part, particularly in this respect, except on the occasion when this injury is alleged to have occurred,—that is, on the night of the 15th of October, 1886. Up to that time it was in proof, and I suppose on testimony not to be doubted by the jury, that it did, as fast as it filled, spread the earth, and keep it in such condition as could be of use to the public in travelling over it, although at times there may have been a little more difficulty in passing than at others,—of course in heavy roads, or in any new-made road, it would have been the case. It had a right to occupy the road and make that fill, but it was bound to keep it in such condition that the ordinary travel should not be obstructed from day to day; and if you are satisfied that had been done up to the time when this injury occurred, why of course it was doing what it was bound to do, and did what it had a right to do.

Now, I will say that the next question has reference to the second paragraph. The next point of this Act: In case of bridge crossings over a new road, they shall be well constructed, not less than 16 feet in the clear (wide), for travel, with causeways or approaches on each side, in this width with the bridge (that is 16 feet), protected by sufficient rails or guards; and all grade crossings (which this was), when finished, shall be well planked or macada-

mized between the rails, not less than 16 feet in width, and no causeways or approaches to either bridges or grade crossings shall be of a heavier grade than five degrees, protected as aforesaid; that is, by good and sufficient railings or guards.

Now, the second point on which we are requested to instruct is as follows: "That the law of Delaware provides that all grade crossings of railroads over public highways in the State shall be well planked or macadamized between the rails, not less than 16 feet in width, and that no causeways or approaches to either bridges or grade crossings shall be of a heavier grade than five degrees, protected by good and sufficient railings or guards." Now, if the jury believe that the injury to the plaintiff was caused by the neglect of the defendant to observe and keep any of the provisions of the said law, the plaintiff is entitled to recover, provided the jury believe that no negligence can be justly attributed to her, the plaintiff. The question is whether this grade crossing was greater than five degrees. It is for you to say, from the evidence, whether it was or not, and that has reference to the time of the night of the 15th of October, 1886. While it was filling the grade, the grade could not be fixed of course, except as in the general fill, endeavoring to keep it in proper condition; but the law requires that to be done, and it was the duty of the company to see that it was so constructed. What was it on the night of the 15th of October, 1886, in that regard? because no injury occurred in this case until that time, and then was the time when you are to consider what was the grade of the crossing. At that time the fill had been completed, according to the testimony. There is no dispute, I believe, about it; it has been generally stated to have been completed by the middle of the July preceding. Now there has been this objection made, that the company did not proceed to erect a railing on the sides of that road until the 15th of October, when this injury occurred. Now, I will say to you, it is a question for you to decide whether, during the progress of that work up to the time when the filling had been completed, it was necessary there should have been

13

any railing there, or if you are satisfied from the evidence, or from any knowledge you have on the subject independent of the evidence, that it would have been impracticable or at all events premature to erect a railing there while they were engaged in making the fill. The fill had to be made before the railing was put up, because if not, the filling would have made the railing too low; besides it ought to have time, I take it for granted, to settle before a permanent railing was put there. That is a thing to be done after the embankment was completed—after it has acquired sufficient solidity to sustain the railing, and not before. Now, it would be for you to say, from the facts and circumstances proven in this case, whether there was any duty on the part of the company to have erected a railing there before the 15th of October, 1886, it having been completed in July. If it was neglected afterwards, to what time it was done did not affect this case; it was what it was bound to do up to the time when this injury occurred, that is, the date which I have mentioned. If it did it within a reasonable time, and if it was reasonable to leave the embankment stand until the 15th of October, before the rail was put up,—and it is not claimed that it was erected before that time—then your verdict should be, so far as it depends on that circumstance, that the defendant was not guilty of negligence in delaying putting up the rail, and that the grade was as I have stated. That was the law, and that should have been the grade of the road, not greater than five degrees.

Now, the third point on which you are instructed is that the violation of the statute is presumptive evidence of negligence. It is undoubtedly presumptive evidence of neglect,—the statute and requirements of the statute,—but it cannot be express foreseen negligence which resulted in the injury. If, in the instruction, the proceedings require that if the injury was caused by that neglect of the statute, then of course it would be negligence, and the company would be responsible; but suppose that grade was less or more than five degrees—would that have made the injury? Was the fact that it was greater than five degrees or six or seven degrees,—was

that the neglect of the act which would have resulted in this injury? Suppose it had been five degrees, would the accident have occurred? Would the horse have run away or not? Plaintiff asks us to say to you, the defendant has violated this statute; if it caused this injury, then the defendant is responsible,—and I will so instruct you. I state the law as they ask us to state it to you, and I wish the counsel to so understand. You must find that it was greater than five degrees, and, that because of that the accident occurred. If it had been five degrees, would the injury have been any more or any less liable to occur? When an individual sues for an injury, he must show that the injury was the result of the negligence of the company in that particular alleged, and if it was not caused, but might have been if the grade had been five degrees, —no greater, no less,—why then it could not be expected to be the promoting or immediate cause of the injury; and that is what is meant by this point made by the court in charging you.

The next point is, where a railroad company has been permitted to lay its track along and across a public highway, it is bound to the use of every reasonable precaution to prevent injury to those passing along the highway or crossing its track that is laid along or across the highway, and if it fails to exercise a proper degree of care, not only such as is provided by the statute, but also such as is rendered necessary by the character of the obstruction and its location, having reference to the use of reasonable care on the part of those approaching the obstruction, it becomes a nuisance to individual rights and renders the company liable in damages.

The next is, when a railroad company constructs its railroad over a public highway, it is bound to so restore the highway that its use by the public shall not be rendered less safe or convenient, except so far as diminishing the convenience of the public is inseperable from its use by the work. And the question of whether or not the company has discharged its duty is a question of fact for the jury. It is bound to restore the public highway to as good condition as it can possibly be made with proper care and attention

on its part, after constructing the railroad, but of course subject to any diminution in the use of the public or the safety of the public over it, by the construction of the railroad across the road. Of course no railroad can be constructed across a public highway without rendering it less safe than it was before, because persons passing over it would be subject to more danger every time they attempted to pass over it; but it has a right to do so, because the law authorizes it to so construct the road; but it must exercise due care and caution in making the road as safe as it reasonably can for the use of the public, subject to the impairment of that use by the necessary construction of the road; without that no railroad could be built. A railroad company is liable for negligently placing objects on or near the public highway, naturally calculated to frighten horses. If the jury believe the injury to the plaintiff was caused by the negligence of the defendant in not placing a light or other signal of danger upon the crossing, the plaintiff can recover, unless some negligence justly attributable to her has been shown to the satisfaction of the jury.

Gentlemen, that closes all the points propounded by the counsel for the plaintiff in support of this action.

On the other hand the counsel for the defendant have propounded the following: " First: There can be no recovery against the defendant unless the jury shall find, from the evidence in the case, that the defendant company was guilty of negligence, and that such negligence was the cause of the injury to the plaintiff."

That is the general principle of law applicable to the case.

Again, the burden of proof as to negligence on the part of the defendant company rests on the plaintiff; the injury, the defendant alleges, was the result of negligence on the part of the plaintiff. It must be shown, from all the evidence in the case, that it must be guilty of negligence; otherwise no action lies. We say the burden of proof is what makes this out the preponderance of proof in the estimation of the jury. It is not like a criminal case, where the accused is presumed to be innocent, and the State is bound to prove to

the satifaction of the jury that he is guilty ; but the plaintiff necessarily assumes the point of proving to the satisfaction of this jury that the company was guilty of negligence which caused this injury. That may be by the preponderance of the evidence, however, in the estimate of the jury ; but the burden, considered in that respect, does rest upon the plaintiff to show that to the satisfaction of the jury. Surely there can be no recovery against the defendant company for the damages complained of, unless the jury shall find, from the evidence in the case, that the defendant company improperly obstructed or interfered with the public highway known as the Barley Mill Road ; and that such obstruction or interference was of such a character as to cause an ordinary gentle and quiet horse to take fright. It is for you to say, by all the evidence before you, what were the qualities of this animal,—whether she was a safe animal or not. It is not denied that she was spirited ; but was she an ordinary quiet and gentle horse ? If, then, there was any obstruction there that such a horse would get frightened at, it was negligence of the company to leave it there; but it would not be negligence on its part to leave such an obstruction there that might frighten a very unsafe horse, or a very unruly horse, or a dangerous horse, by riding over such highways at such times. The defendant company had a right to place or leave the car in question, either on its own right of way or the private property of E. I. Du Pont & Co., so long as it did not encroach, in whole or in part, upon the publc highway known as the Barley Mill Road. We are referred to authorities which I do not think entirely applicable to this case. I have not looked at the declaration ; but, if there be any count in the declaration which alleges that this car was placed, not upon the highway or any part of the highway of this Barley Mill Road, but so near to it that it would frighten an ordinary quiet and gentle horse in passing it, or cause it to shy ; and, as alleged in the narr., that road was obstructed by this car being left on the road or a part of the road,—then it would not be guilty of negligence if the car was left in such a position as to not freighten an ordinary quiet and

gentle horse, if such was the fact, and the jury would be so satisfied; but if it was so near to the road as to frighten an ordinary quiet and gentle horse, then it was guilty of negligence in leaving it there for the night, although it was not on any part of the road, if it was so near; but it had a right to leave it there, if it would not frighten a horse of that kind, for the time being,—for the night,— carrying, I suppose, material down for the purpose of being used on its road; and the car was left there at night.   It did not remain there, according to the evidence, much longer; but the company has a legal right to use its cars and bring its materials by the cars in the place upon which it was at work, across this crossing; it had a right to do that, and use whatever it chose, provided it used the necessary care and caution to prevent it being placed so near the road as to frighten a horse of that kind and cause it to shy.

If the jury should find, from the evidence in the case, that the car in question, at the time the horse drawing the carriage in which the plaintiff was driving took fright and ran away, was entirely outside of and beyond the limits of the public highway known as the Barley Mill Road, the defendant company cannot be held liable for any consequence of the frightening or running away of a horse. That would depend upon the character and qualities of the horse. Some horses would take fright at a car farther from the track than this was off the public highway.   If it was 20 or 30 feet from the highway, and that distance would not frighten an ordinary quite and gentle horse, and cause her to shy, then it was not guilty of any negligence in the case; because it had a right to use that road and to use that car and bring it up as near to that highway as it could, for the purpose of its work, provided it exercised ordinary care and diligence to prevent it being left so near to the public highway as to frighten a horse of that kind."

" That the plaintiff, Ella T. Kyne, being, at the time of the alleged firightening or running away of the horse in question in the possession, control, and custody of her father, William Kyne, any negligence on his part in so directing the movements of said horse

as to contribute to the negligence complained of would, in point of law, be negligence on the part of the plaintiff, Ella T. Kyne, and prevent a recovery against the defendant company."

That is the last of the defendant's points ; and that brings us down to this question, which, as I have already stated to you, is one of the most doubtful questions that has been presented, so far as the law of the case is concerned ; and on that point we must say to you, after such consideration as we have been able to give to it, that this daughter, of tender age (then about nine years), was in the actual control and custody of her father at the time. She was then in the presence and company of her natural guardian and protector ; in law all she did there was done by him ; he took her out ; it was not her own act, because she is not responsible for her own acts ; it was his act in taking her into the carriage and driving down the road at that hour of the night.

Now if you are of the opinion, from all the facts in the case, that he was guilty of any contributory negligence (for want of the exercise of due and ordinary care and circumspection, in driving down the road, by which he would have become chargeable with contributory negligence to the accident), then he could not recover in the action , and if he could not recover in such an action when he sustained an injury by the same accident, we are inclined to think, upon the authorities cited,—although there are cases conflicting,— that the child could not maintain the action, and that she is the plaintiff in this action. In contemplation of law, the negligence of the father, which was the cause of the whole accident, or if he was mostly the cause or the contributory cause of the accident, then it was his act ; and we do not think that the child could maintain any action for the injuries she sustained, if it resulted from the want of due care, and negligence on the part of the father. It is going very far to impute the negligence to the child, but that is only in legal phraseology. It is certain that it would be extremely hard to hold the defendant liable for any injury that occurred to the child, if the act of the father, who was then her parent, and who then

had her,—I won't say between his knees, but, at all events, in the carriage beside him,—was the contributory cause of the accident; and if there is proof, to the satisfaction of the jury, on the part of the company to sustain that charge, then it could not be sued.

If the act of the father, who was driving at the time (or if he was not driving, if the child had the reins, or anybody else had the reins), was the cause of the accident; and if the company could not be sued, and in law was not rendered liable for any injury under the circumstances,—I cannot conceive how an action could lie against it, recognizing that principle of the law, even at the suit of the child, as much as we may deplore the accident which befell her. We therefore must say to you, gentlemen, that you are to consider now about this matter of obstruction, and how far the father was guilty of any contributory negligence, if he was guilty of any, in order to determine whether the plaintiff can recover on the action, or the defendant should have your verdict.

There is a mystery in this case still, and it is about this obstruction. It was not simply the car standing on the track, if I unstand the case, that produced the accident; at most that caused only the horse to shy. The plaintiff stated that there was an obstruction on the road: and the wheels struck on something hard, causing the carriage to jolt, and the horse sprung off. The horse did not spring off the embankment of the road. No accident occurred from the shy, but it was one continuous act, as I understand from the case. The testimony on that point was not as clear as I would like to have had it, because there was nobody present of the witnesses but the father, the mother, and the child; and the child probably hardly noticed it. You would hardly expect it under those circumstances, if it was followed by the subsequent jolting and striking an obstruction on the road causing the carriage to first sink down, then suddenly to raise up, then by its own momentum forced upon the haunches of the horse or its heels, as they said, causing it to jump and run away. That was the beginning of the accident. The main part of it was in that obstruction alleged to have been there.

Now, what was that obstruction? If that obstruction was left there by the company, provided there was such an obstruction, —some stated that it was a rail, it was too dark to see,—Mr. Kyne did not pretend to say he saw the rail, but there was something hard,—if that obrtruction was there, left there by the servants of the company who were attending to the fixing of that part of the road, if it was left there by them at the close of the days work,— then it was the neglect of the company; if that obstruction got there any other way, after night-fall and after the men had left; if it got there by being dropped by any passing vehicle, anything hard, or if it had been placed there by malice or mischief by any-body,—you could hardly attribute that to the negligence of the company, for the company was not bound to keep men there through the night to see that no obstruction got upon the road. That would have been the utmost diligence on its part, which the law will not require; but the law did require that, at the close of every day, when the men ceased their day's work and left, that the track was in a safe condition for public travel; but it will be for you to say, under all those circumstances and all the evidence, after you have duly weighed and considered it, whether there was such an obstruction on the road. If there was not, then you can only account for it by some misapprehension on the part of the witness to the contrary; or if there was such an obstruction there, and was left there by the company or servants of the company, while they were at work upon it, at the close of that day, or had been left there for a length of time, and they had not removed it and properly leveled the road there,—then it would have been negligence on their part.

I think now, gentlemen, I have passed over all the points in this case; and if you come to the opinion, after having duly weighed all the evidence, that the plaintiff, on the ground we have stated, was entitled to recover, the question would be, in what amount of damages? It will be such as you may consider a reasonable and proper compensation for the injury sustained by her. If, however, you should come to the conclusion that the defendant was

not guilty of negligence so far as the proof in this case before you goes, then your verdict should be for the defendant. If, however, you should be of the opinion that there was any negligence on the part of the company, but at the same time, that the father, who had charge of the carriage, and had the charge and control and safe-keeping of his child while he was driving with it, was in any way guilty of contributory negligence which led to it or caused it, then your verdict should be for the defendant. And with these remarks, gentlemen, I will leave the case to your consideration.

Verdict for the defendant.