ISAAC R. BROWN, JR., administrator of the estate of FRANK CYCYK, deceased, v. LOUIS SCHENDELMAN.

(*April* 5, 1928.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*James R. Morford* for the administrator.

*William Prickett* for defendant.

Superior Court for New Castle County, No. 98, September Term, 1927.

PENNEWILL, C. J., delivering the opinion of the court:

This action was brought by the plaintiff for the death of his intestate, which occurred when the intestate, an infant four years of age, was burned, as alleged, in a fire kindled in an open lot in the City of Wilmington by the defendant's servant. The plaintiff's declaration consists of five counts. The defendant has moved that the second count be stricken out for the reason that it is substantially identical with the third count, and has demurred specially to the fifth count.

Are the second and third counts so similar that they cannot both stand, and one or the other must be stricken out? They are very much alike, but not, we think, substantially identical. Under the rules of pleading, if two or more counts are alike, only one will be permitted to stand, and the others will, upon motion, be stricken out. Woolley says, at *Section* 432 of his work on *Delaware Practice*:

"The motion to strike out may be made when a plaintiff has inserted numerous counts substantially alike."

But under our practice, if there is a different act of negligence alleged in each count, the motion will be refused, and this is not contrary to the rules of pleading.

In the present case, the act of negligence averred in the second count was the failure of the defendant to properly guard and protect the fire in order to prevent burning particles from blowing about the lot. The third count alleges that the defendant was negligent in causing a fire to be built on the lot under the circumstances.

The defendant has not demurred to the third count, and we may, therefore, assume that it states a good cause of action. Does the averment that the defendant negligently allowed and permitted

said fire to be and remain unguarded and unprotected, etc., "state a different cause of action"? We think it does. The defendant argues that leaving a fire unguarded and unprotected cannot be in any way connected with an injury which takes place at some distance from the fire. The obvious answer is that, if the fire had been properly guarded and protected, the burning particles might have been prevented from blowing about the lot. The motion to strike out is, therefore, refused.

To the fifth count of plaintiff's declaration the defendant has demurred, assigning two grounds:

(1) That the ordinance as amended, and mentioned in said count, was not sufficiently pleaded.

(2) There was no causal connection between the alleged breach of the ordinance and the accident.

The plaintiff's declaration refers to the ordinance, as amended, in these words:

"In violation of an ordinance of the Mayor and Council of the City of Wilmington as amended by an ordinance of the Street and Sewer Department of the City of Wilmington. * * * "

*Section* 4205 of the *Revised Code* provides that:

"In pleading the ordinances and resolutions of the Council of Wilmington, it shall not be necessary to recite or draw them out."

The defendant concedes that, because of this statute, it was not necessary for the plaintiff in his fifth count to draw out the ordinance of the Council of Wilmington, but claims that the statute does not cover an ordinance of the Street and Sewer Department and that such an ordinance is subject to the rules of the common law and must be pleaded. We think that, where an ordinance of the city is amended by an ordinance of the Street and Sewer Department, it becomes an ordinance of the city and is covered by the statute referred to, which makes it unnecessary to plead it. The plaintiff refers to the ordinance of the Mayor and Council as amended by an ordinance of the Street and Sewer Department.

But while an ordinance of the city does not have to be pleaded, it must be mentioned or referred to in such a way that the defendant may know what ordinance is meant. We think the

plaintiff has failed to do this. It bears no ear-mark by which any one could tell, from the language employed, what particular ordinance is referred to. The title might be sufficient, in connection with the reference to the ordinance in the count, but it would be better to state the date of its passage also. If these facts are stated, the ordinance would be sufficiently pleaded to give notice to the defendant.

The defendant's first ground of demurrer to the fifth count must, therefore, be sustained.

▮ The second ground is that there is no causal connection between the alleged breach of the ordinance and the accident.

For the purpose of argument on this point, it is agreed that the ordinance referred to is as follows:

"If any person shall throw or fire any cracker, squib or other firework within the limitations of the city, or shall make a bonfire or any other fire in the open air except in the course of some trade or business (a fire may be built in any proper iron box or pan, the bottom of which shall be elevated at least six inches above the ground), in any street, lane or alley, of this city, or in any lot or place in this city, within fifty yards of any street, lane or, alley, or so as to endanger any property, every person so offending shall forfeit and pay a fine of ten dollars." *Compiled Ordinance of 1910*, p. 751.

The defendant contends:

(1) That the ordinance is intended solely for the protection of property.

(2) That if the purpose of the ordinance was to protect persons as well as property, it was persons on streets, lanes or alleys and not those who might be anywhere on a vacant lot in the city.

We cannot say the purpose of the ordinance was to protect property only. We think the ordinance, when properly construed, means that no one shall build a fire in any street, lane or alley of the city, or in any lot or place in the city, within 50 yards of any street, lane or alley except in the course of some trade or business; nor shall any one build a fire in the city, except in the course of some trade or business, so as to endanger any property.

But the question remains: Was the ordinance designed to protect persons anywhere on a vacant lot in the city? Such purpose is not shown by the fact that it was made unlawful to build a fire

within 50 yards of any street, lane or alley. It is clear that the ordinance was intended to protect persons using any street, lane or alley; is the protection confined to such persons? Suppose the prohibition had been only against building a fire in any street, lane or alley; could it be said it was for the protection of a person who might be anywhere on a vacant lot, and a considerable distance from any street, lane or alley? We think not. Then what difference can it make that a fire is prohibited 50 yards away? If the purpose was to protect persons using the passageways of the city, it was reasonable to provide that a fire should not be built within 50 yards thereof because one so close might injure such persons. If the purpose was to protect persons who might be wandering anywhere on a vacant lot, why was the limitation of 50 yards employed? A fire built 100 or 200 yards away might be equally dangerous to such persons. After carefully considering the ordinance in question, and the extent of its application, the Court feel constrained to hold that it was designed to protect persons who use the streets, lanes and alleys of the city which may be assumed to be safe for travel. It does not appear from the declaration that plaintiff's intestate was, at the time of his injury, on or near any street, lane or alley, and, therefore, there is no causal connection shown between the violation of the ordinance and the injury complained of.

For this reason, also, the demurrer to plaintiff's fifth count is sustained.

■ The plaintiff has also demurred to defendant's fifth plea, which alleges that the vacant lot in the plaintiff's declaration mentioned—

"was being used and for a long time theretofore had been used for the burning of rubbish and other waste material by numerous persons with the permission of said owner of said lot; that therefore said vacant, unimproved and uninclosed lot was a place of danger to the said Frank Cycyk, said plaintiff's intestate, he being then and there an infant of tender years; that the parents of said Frank Cycyk knew or in the exercise of reasonable care should have known that said vacant and unimproved and uninclosed lot was being used and had been used for a long time theretofore for the burning of paper and other waste materials; that it was the duty of said parents of said Frank Cycyk to guard said infant and to prevent him from exposing himself to danger by going on said vacant, unimproved and uninclosed lot where the said

parents of said Frank Cycyk knew or should have known that he, the said Frank Cycyk, might suffer serious damage, and yet the said parents of the said Frank Cycyk, notwithstanding their said duty, allowed and permitted the said Frank Cycyk to go and be and remain on said vacant, unimproved and uninclosed lot, so used, as aforesaid, and as a result of the negligence of the said parents of said Frank Cycyk, the said Frank Cycyk was burned as the plaintiff hath heretofore alleged. And the defendant further says that the parents of the said Frank Cycyk are the persons entitled to the personal estate of the said Frank Cycyk under the statutes of the State of Delaware in that case, and this the said defendant is ready to verify; wherefore he prays judgment if said defendant should further maintain his aforesaid action against him."

This plea raises the question and invokes the doctrine of imputed negligence from parent to a child of tender years who is killed by the alleged negligence of another.

It is true, as the plaintiff states, that on the question whether in case of personal injury to a child of tender years negligence of its parents or guardians in whose care the child is placed would be imputed to the child so as to prevent a recovery, the authorities are in direct conflict. The doctrine and its modifications are very fully stated in 20 R. C. L., §§ 127-131, and in 29 Cyc., pp. 552-559. The authorities on the subject are cited in these works and it is unnecessary to repeat them here.

In the New York case of *Hartfield v. Roper*, 21 *Wend.* 615, 34 *Am. Dec.* 273, decided in 1839, the court promulgated the rule that the negligence of the parents of a child of tender years would be imputed to the child and bar a recovery by him for injuries negligently inflicted. In support of this rule it is said:

"An infant is no*t sui juris.* * * * He belongs to another, to whom discretion in the care of his person is exclusively confided. That person is keeper and agent for this purpose; and in respect to third persons his act must be deemed that of the infant, his neglect, the infant's neglect. * * * "

"But even in some jurisdictions where this doctrine is adopted, its harshness is generally recognized and the tendency is to modify and limit it, so far as consistent with adjudicated cases. Thus it is held, that when at the time of the injury the child was exercising such care that it could not be charged with negligence had it reached years of discretion, negligence in permitting it to be in a place of danger will not preclude recovery, its parents' negligence not being the proximate cause of the injury." 29 *Cyc.* 552.

In 20 *Ruling Case Law,* "*Negligence,*" §§ 128, 129, the doctrine is stated thus:

"According to the rule announced in several jurisdictions, an action in behalf of a child is defeated by proof that the parent or custodian was negli-

gent. 'Or, as it has been expressed, if a child is too young to be capable of caring for itself, it is the duty of its proper custodian to care for it, and in a suit to recover for an injury caused by the negligence of another, if its custodian was guilty of negligence, that negligence is imputed to it. * * *

"According, however, to the very decided weight of authority, the negligence of the parent or guardian having custody and control of an infant in exposing it to danger will not be imputed to the child so as to preclude its right of action against a third person by whose negligence it is injured."

We understand this exception to mean that, even though the negligent parent cannot recover damages for his own benefit, the child will not be precluded by its parents' negligence from recovering.

Another well-settled principle is that the negligence of the parent which will prevent recovery must be such as contributed proximately to the injury. And so courts have refused to hold in some cases that parents' negligence in not keeping constant watch and restraint over their child would bar recovery for the child.

Some decisions make a distinction between cases where the contributory negligence of the parent occurs while he has the child under his immediate control or in his presence, and those cases which occur where the child is away from the parent. Some courts, however, have not been able to see any sufficient basis in principle for such distinction. 29 *Cyc.* 556.

Judge Thompson, in his work on *Negligence* (*volume* 1, *p.* 294), in speaking of the rule announced in *Hartfield v. Roper, supra,* says:

"That it should be adhered to in any enlightened jurisdiction with respect to children is a reproach to the judges who uphold it."

It is generally conceded that the negligence of the parent will prevent him from recovering for injuries to his child where the suit is brought for the parents' own benefit. This is consistent with the general rule which prevents any one from profiting by his own negligence.

As already said, there is a direct conflict between the authorities on the subject of imputed negligence from parent or guardian to a child of tender years, and it is useless to attempt to reconcile them. They are hopelessly divided, and both sides are supported

by reason as well as authority. It is the apparent harshness of the extreme doctrine, rather than its lack of principle, that has caused courts to limit its application.

Some of the distinctions made for that purpose seem highly technical, if not lacking in legal basis. For example, it is pretty generally conceded, as we have said, that the negligence of the parent will not be imputed to the child and bar recovery if the suit is brought by the infant for its own benefit, although it will be a bar if the suit is by the negligent parent exclusively for his benefit. And some courts have gone so far as to say, that if the action is by the administrator for the benefit of the infant's estate the parents' negligence will not be a defense even though he will be the sole beneficiary under the law of distribution. The leading authority for the last proposition is *So. R. R. Co. v. Shipp*, 169 *Ala.* 327, 53 *So.* 150. But there are other cases which repudiate this holding, and the leading one is the well-considered case of *Flagstaff v. Gomez*, 23 *Ariz.* 184, 202 *P.* 401, 23 *A. L. R.* 661. Other cases to the same effect are *Bamberger v. Railway Co.*, 95 *Tenn.* 18, 31 *S. W.* 163, 28 *L. R. A.* 486, 49 *Am. St. Rep.* 909; *Cirosky v. Smathers*, 128 *S. C.* 358, 122 *S. E.* 864; *Ill. Cen. R. R. Co. v. Warriner*, 229 *Ill.* 91, 82 *N. E.* 246; *McCarn v. Detroit*, 234 *Mich.* 268, 207 *N. W.* 923.

The doctrine under consideration is not a new one in this state, although the extreme rule declared in New York has not been distinctly recognized here. In the Delaware case of *Kyne v. Wil. & Northern R. R. Co.*, 8 *Houst.* 185, 14 *A.* 922, which is cited in textbooks as an authority for such rule, the facts of the case bring it within the limited rule; that is to say, neither the facts nor the opinion warrant the conclusion that the court held it to be negligence on the part of parents to fail to keep constant watch on the movements of their small children so as to prevent them from straying to places of danger. We think it is obvious from the court's language that the contrary was intended.

In the *Kyne* case the child, about nine years of age, was in the immediate custody and control of the father. Her injuries

were sustained when a horse in control of her father ran away, upsetting the vehicle in which both were riding. The negligence charged was the father's lack of due care in driving the horse. The court said:

"It is certain that it would be extremely hard to hold the defendant liable for any injury that occurred to the child, if the act of the father, who was then her parent, and who then had her,—I won't say between his knees, but, at all events, in the carriage beside him, was the contributory cause of the accident. * * *

"If the act of the father, who was driving at the time (or, if he was not driving, if the child had the reins, or anybody else had the reins), was the cause of the accident. * * * "

It will be observed that the court recognized and emphasized, not only the presence of the child with the father, but its closeness and actual contact, perhaps between his knees. The parent had, or should have had, actual control of the situation, and it seemed not unreasonable to hold that, if the injuries to the child were caused by the father's want of due care at the time of the accident, he was guilty of negligence, and there could be no recovery. But this was far from deciding that parents are guilty of negligence that may be imputed to the child if its injuries might be caused by the failure of the parents to keep the child at home, or to safely guard and protect him when away from home under any circumstances.

The *Kyne* case is an authority for the doctrine of imputed negligence in the restricted sense, but not in the unrestricted sense contended for by the defendant.

There are very few cases that sustain the extreme doctrine of imputed negligence recognized in some cases. We have seen but one in which the facts were closely analogous, viz., *Specht v. Waterbury Co.*, 208 *N. Y.* 374, 102 *N. E.* 569. The facts were that a fire in which rubbish was burned was built almost every day on a vacant lot. The father of the injured child testified that his child used the lot as a playground on which a fire was built every day. In view of the facts even this case does not extend the rule as far as we are asked to go. Even in the leading case of *Hartfield v. Roper*, where a very young child, sitting or standing in the beaten

track of a public highway entirely unattended, was struck by a passing sleigh, the facts were different from those in the present case. The danger was imminent and great all the time. In the leading Massachusetts case of *Holly v. Boston Gas Co.*, 8 *Gray (Mass.)* 123, 69 *Am. Dec.* 233, relied on by the defendant, it was held negligence on the part of the father not to have had the gas leak stopped, or not to have withdrawn the child from the danger after he discovered it. It was analogous to those cases where the custodian was present and could have prevented the injury by the exercise of reasonable care.

We think there are very good reasons why the unrestricted doctrine should not be recognized. One reason would be the difficulty of its application and operation in many cases. It is easy to see how it might apply to a case where the parent or guardian is actually present, and in the custody or control of the child at the time of the injury, or to a case where the parent or guardian could, by proper care at the time of the injury, have prevented it. This, after all, amounts to saying that the parent would be negligent if the accident happened because of his failure to exercise due care. But to hold that it is the duty of the parent to keep constant watch over the child for the prevention of injury would be equivalent to saying, as a matter of law, that the failure to perform that duty is negligence that could be imputed to the child.

One objection to holding that the rule applies when the child is away from its parents at the time of the injury is that negligence depends so much upon the circumstances of the case that no general rule can be laid down. Some parents are able to look after their children practically all the time, or hire someone to do it for them, while others who are financially unable to do that cannot be expected to exercise the same care. Besides, it is possible for a child to escape from its home without the knowledge or fault of any one. It is a well-known fact that it is impossible for any parents to watch and guard their children all the time. There are so many elements in the situation, and so many facts that might prevent the application of the rule, that it would be difficult, if not impossible, to determine the question of negligence in very many

cases. We think the jury should not be given such a wide field for speculation. No such difficulty arises if the parent is present at the time of the injury, or is able at the time to prevent it.

▉ Even if the parents could be regarded as negligent if they failed to keep close watch over the child that is injured, could such failure constitute the proximate cause of the injury if the parent was not present and had no reason at the time to expect the child would go to the place of danger? It is the law of this state that contributory negligence which will defeat an action for personal injuries must be such negligence as constituted the proximate cause of the injury.

It is conceivable that the negligence of the parent might be the proximate cause in such a case as the *Kyne* case, but difficult to see how it could be in the present case in view of the facts admitted by the pleadings.

We have said it seems to be well settled that the negligence of the parent will be no bar to an action brought by the administrator of the child if the parent is not the beneficiary, but the law of this state is different if we recognize the *Kyne* case as authority. In that case the suit was brought by the child and for her own benefit, and the court held that there could be no recovery if the jury believed that the alleged negligence of the parent was the proximate cause of the accident. If it would defeat recovery in such a case, it would be in a suit brought by the administrator where the facts were similar.

While the *Kyne* case is an old case, and the rule declared in the early New York case has been disapproved or modified in many cases since the decision of the Delaware case, we are not inclined to overrule it. But we think the rule should not be extended beyond the facts of that case or to facts closely analogous thereto.

The plaintiff's demurrer to defendant's fifth plea is, therefore, sustained.